UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

BENJAMIN ROY WILKINS,

        Petitioner,

        Case No. 1:22-cv-427

v.

        Honorable Robert J. Jonker

KRISTOPHER TASKILA,

        Respondent.
_____/

**OPINION**

       This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (discussing that a district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). The Court may *sua sponte* dismiss a habeas action as time-barred under 28 U.S.C. § 2244(d). *Day v. McDonough,* 547 U.S. 198, 209 (2006).

       Based on Magistrate Judge Phillip J. Green's preliminary review of the petition, it appeared that the petition was untimely. (Op., ECF No. 8.) The Court provided Petitioner notice and an opportunity to be heard regarding the timeliness question. *Day*, 547 U.S. at 210; *Acosta v. Artuz*,

221 F.3d 117, 124 (6th Cir. 2000). Petitioner filed a response by the deadline; however, he also requested an additional fourteen days to file a more detailed response. The Court has waited twenty-eight days, but Petitioner has not filed any additional response. The Court will, therefore, deny Petitioner's request for additional time as moot.

After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because the petition is untimely.

## Discussion

### I. Factual Allegations

Petitioner Benjamin Roy Wilkins is incarcerated with the Michigan Department of Corrections at the Carson City Correctional Facility in Carson City, Michigan. Petitioner pleaded *nolo contendere*[1] in the Montcalm County Circuit Court to a charge of second-degree child abuse, in violation of Mich. Comp. Laws § 750.136b. In exchange for his plea, a charge of first-degree child abuse was dismissed. On September 19, 2013, the court sentenced Petitioner as a second habitual offender, Mich. Comp. Laws § 769.10, to a prison term of 10 to 15 years, to be served

---

[1] In Michigan, a plea of *nolo contendere* has essentially the same effect on the criminal prosecution as does a plea of guilty:

> Since a plea of *nolo contendere* indicates that a defendant does not wish to contest his factual guilt, any claims or defenses which relate to the issue of factual guilt are waived by such a plea. Claims or defenses that challenge a state's capacity or ability to prove defendant's factual guilt become irrelevant upon, and are subsumed by, a plea of *nolo contendere*. Hence, we hold that a plea of *nolo contendere* has the same effect upon a defendant's ability to raise an issue on appeal as does a plea of guilty. Only those defenses which challenge the very authority of the state to prosecute a defendant may be raised on appeal after entry of a plea of *nolo contendere*.

*People v. New*, 398 N.W.2d 358, 363 (Mich. 1986) (footnotes omitted).

consecutively to a sentence imposed by the Montcalm County Circuit Court for an offense for which Petitioner was on parole at the time he committed the child abuse.[2]

Petitioner provides some of the underlying facts in his supporting materials. The victim "had a skull fracture, severe swelling in the brain, and injury to her left eye . . . ." (ECF No. 1, PageID.8.) Petitioner attaches excerpts from a state court family division petition seeking to terminate the parental rights of the victim's mother—Petitioner's co-defendant. That petition, in turn, quotes excerpts from the report of Dr. Debra Simms of the DeVos Children's Hospital in Grand Rapids, Michigan:

a. "[i]n the absence of a significant traumatic event or credible history of accidental injury, [the victim's] serious and life threatening injuries are extremely concerning for non-accidental trauma and a provisional diagnosis of probable pediatric physical abuse is given."

b. "Further evaluation for clarification of the full extent and nature of her injuries will be done when and if she is able to be stabilized. [The victim] may not survive her injuries and further evaluation would then be done by the Medical Examiner."

c. "[T]he significant and unreasonable delay in seeking care for an unresponsive 2 year old child shows definite evidence of Medical Neglect."

(ECF No. 1-1, PageID.28 (alterations in original).) Another doctor, Dr. Sarah Brown, opined that the injuries were from some type of blunt force trauma such as a kick or a punch. (*Id*.) Petitioner was identified as one of two caretakers for the child. (*Id*.) Petitioner told police that he was caring for the victim when the injuries occurred. (Police Report, ECF No. 1-1, PageID.29–30.) Based on the story Petitioner told police, it was apparent that the victim was injured and Petitioner was aware

---

[2] Petitioner attached to his letter petition the register of actions from his criminal case in the Montcalm County Circuit Court. (Register of Actions, ECF No. 1-1, PageID.42–48.) To the extent the facts set forth above are not derived from the letter petition and supporting Michigan Supreme Court application for leave to appeal, they are taken from the register of actions.

of the injury, but he did not call for an ambulance for about an hour, even though he spoke with hospital personnel and an emergency dispatcher regarding a "friend" who was unconscious. (*Id*., PageID.34–35.) Both recommended calling for an ambulance, but Petitioner delayed any request for help. The doctors told police that the victim:

> was injured, not due to an accident, but it was definitely a very violent, multiple, physical assaults, not only to [the] head, but also to her abdomen area. Her bruising on her body from what they could see at this point would indicate that and support those statements. They stated that this was by no means an accident as stated in their reports.

(*Id*., PageID.36.)

The amended felony information charging Petitioner listed two counts: "COUNT 1: Child Abuse-First Degree [the defendant] did knowingly or intentionally cause serious physical and/or serious mental harm to a child . . . [and] COUNT 2: Child Abuse-Second Degree [the defendant] did cause serious physical and/or serious mental harm to a child by failing to call 911 and seek medical help immediately upon seeing an unresponsive and/or unconscious 2 year old." (Am. Felony Information, ECF No. 1-1, PageID.41.) Petitioner makes clear that he was, and is, guilty of the crime described in Count 2:

> Defendant-Appellant was willing to plea no contest to the very specific information of committing child abuse in the second degree for "failing to call 911 and seek medical help immediately upon seeing an unresponsive and/or unconscious 2 year old." . . . for that is the non-action he not only told police . . . but also admits freely.

(Pet., ECF No. 1, PageID.16.)

On May 1, 2022, Petitioner filed his habeas corpus petition. It appears that Petitioner is raising two related constitutional challenges: first, that the prosecutor failed to produce the written report of Dr. Simms prior to the plea proceeding, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963); and second, that the trial court should not have accepted Petitioner's plea when it was

4

"based upon an information report that did not state the nature of the offense in a language which would fairly apprise Defendant-Appellant of the offense charged by legislative standards[.]" (Pet., ECF No. 1, PageID.4.)

Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner dated his letter petition May 1, 2022. (Pet., ECF No. 1, PageID.1.) The envelope containing the petition was postmarked May 2, 2022. (*Id.*, PageID.21.) The petition was received by the Court on May 5, 2022. The Court will give Petitioner the benefit of the earliest possible filing date, the date he apparently signed his letter petition, May 1, 2022. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

## II.     Statute of Limitations

Petitioner's application is subject to the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1), which became effective on April 24, 1996, as part of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA). Section 2244(d)(1) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of
>
> (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B)    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

### A. Section (d)(1)(A) Analysis

In most cases, § 2244(d)(1)(A) provides the operative date from which the one-year limitations period is measured. Under that provision, the one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Petitioner sought leave to appeal the judgment of conviction to the Michigan Court of Appeals and then the Michigan Supreme Court. The Michigan Supreme Court denied his application on July 26, 2016, in all respects except one. The supreme court remanded to the trial court "for consideration of the defendant's issue regarding the assessment of court costs." *People v. Wilkins*, 882 N.W.2d 138 (Mich. 2016). There is no indication that Petitioner filed a petition for certiorari to the United States Supreme Court. Instead, Petitioner returned to the trial court to litigate the costs issue. By order entered August 2, 2017, the trial court denied relief regarding costs. (Register of Actions, ECF No. 1-1, PageID.47–48.)

Petitioner's judgment of conviction could not have become final before the trial court's August 2, 2017, order resolving the costs issue. Petitioner did not seek leave to appeal that issue. Where a petitioner has failed to pursue an avenue of appellate review available to him, the time for seeking review at that level is counted under § 2244(d)(1)(A). *See* 28 U.S.C. § 2244(d)(1)(A) (time for filing a petition pursuant to § 2254 runs from "the date on which the judgment became final by the conclusion of direct review *or the expiration of time for seeking such review*"

6

(emphasis added)). However, such a petitioner is not entitled to also count the 90-day period during which he could have filed a petition for certiorari to the United States Supreme Court. *See Gonzalez v. Thaler*, 565 U.S. 134, 152–53 (2012) (holding that, because the Supreme Court can review only judgments of a state's highest court, where a petitioner fails to seek review in the state's highest court, the judgment becomes final when the petitioner's time for seeking that review expires).

Under Michigan law, a party has 6 months in which to appeal a trial court's judgment or order to the Michigan Court of Appeals. *See* Mich. Ct. R. 7.205(A)(2). Accordingly, Petitioner's conviction became final on Friday, February 2, 2018. Petitioner had one year from that date, or until Monday, February 4, 2019, in which to file his habeas application. Petitioner filed on May 1, 2022. Obviously, absent tolling, Petitioner filed more than one year after the time for direct review expired.

### B.  Section (d)(1)(D) Analysis

Of course, the date the judgment became final is not the only possible date that would trigger the running of the period of limitation. Petitioner may claim that he was unaware of the factual predicate of his claim, the trigger set forth in § 28 U.S.C. § 2241(d)(1)(D), until sometime after the judgment became final. Such a claim would be foreclosed by Petitioner's allegations. The crux of his challenge in this Court is that the prosecutor failed to provide a report by a particular doctor. Petitioner notes, however, that he was aware of that report years before his judgment became final. (ECF No. 1, PageID.12–13; ECF No. 1-1, PageID.28–40.) Therefore, it appears that the date the judgment became final provides the latest possible date to trigger the running of the period of limitation.

### C.  Collateral Review Tolling

The running of the statute of limitations is tolled when "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2); *see also Duncan v. Walker*, 533 U.S. 167, 181–82 (2001) (limiting the tolling provision to only State, and not Federal, processes); *Artuz v. Bennett*, 531 U.S. 4, 8 (2000) (defining "properly filed").

There are two potential collateral review filings. First, in December of 2017, Petitioner filed a motion to quash the information. The trial court promptly denied relief on December 22, 2017. (*Id.*, PageID.48.) There is nothing in the records of the trial court, the Michigan Court of Appeals, or the Michigan Supreme Court that suggests Petitioner sought leave to appeal the trial court's resolution of either the costs issue or the motion to quash the information.

Giving Petitioner the benefit of every possible doubt, the Court will construe his December 6, 2017, motion to quash the information as an application for collateral review. The trial court denied relief on December 22, 2017, leaving open the possibility of appeal until Friday, June 22, 2018.[3] Thus, the statute of limitation was tolled at the time the judgment became final under section 2244 (d)(1)(A), on February 2, 2018. It did not begin to run until June 22, 2018. Thereafter, Petitioner had one year, until Monday, June 24, 2019, to file his petition. But Petitioner failed to file his petition in this Court, or any other application for collateral relief in the state courts, by that date.

Petitioner filed a second application for collateral relief in the Montcalm County Circuit Court on June 4, 2020. The trial court denied relief by order entered August 26, 2020. (*Id.*)

---

[3] In *Holbrook v. Curtin*, 833 F.3d 612, 619 (6th Cir. 2016), the Sixth Circuit held that tolling continues until the end of the period in which the petitioner could have appealed the denial of his application for collateral review. As noted above, Petitioner had 6 months to file an application for leave to appeal the denial of his motion to quash the information.

Petitioner sought leave to appeal to the Michigan Court of Appeals. That court denied leave by order entered May 6, 2021. *People v. Wilkins*, No. 356413 (Mich. Ct. App. May 6, 2021). Petitioner filed an application for leave to appeal to the Michigan Supreme Court; however, he attempted to file it too late. The Michigan Supreme Court rejected the application.

This filing cannot help Petitioner because the tolling provision does not "revive" the limitations period; it does not "restart the clock . . . it can only serve to pause a clock that has not yet fully run." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (internal quotes omitted). When the limitations period has expired, "collateral petitions can no longer serve to avoid a statute of limitations." *Id*. By the time Petitioner filed this second collateral review motion, the limitation period had already expired, no later than June 24, 2019. Thus, Petitioner's June 4, 2020, motion for relief from judgment does not save his claim.

### D.  Equitable Tolling

The one-year limitations period applicable to § 2254 is also subject to equitable tolling. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). A petitioner bears the burden of showing that he is entitled to equitable tolling. *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). The Sixth Circuit repeatedly has cautioned that equitable tolling relief should be granted "sparingly." *See, e.g.*, *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011), *Solomon v. United States*, 467 F.3d 928, 933 (6th Cir. 2006); *Souter v. Jones*, 395 F.3d 577, 588 (6th Cir. 2005); *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). A petitioner seeking equitable tolling must show: "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

9

Petitioner has failed to raise equitable tolling or allege any facts or circumstances that would warrant its application in this case. The fact that Petitioner is untrained in the law, was proceeding without a lawyer, or may have been unaware of the statute of limitations does not warrant tolling. *See Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012) ("Keeling's *pro se* status and lack of knowledge of the law are not sufficient to constitute an extraordinary circumstance and excuse his late filing."); *Allen*, 366 F.3d at 403 ("[I]gnorance of the law alone is not sufficient to warrant equitable tolling." (quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991))). Accordingly, the petition does not include allegations that suggest Petitioner would be entitled to equitable tolling of the statute of limitations.

### E. Actual Innocence

In *McQuiggin v. Perkins*, 569 U.S. 383 (2013), the Supreme Court held that a habeas petitioner who can show actual innocence under the rigorous standard of *Schlup v. Delo*, 513 U.S. 298 (1995), is excused from the procedural bar of the statute of limitations under the miscarriage-of-justice exception. In order to make a showing of actual innocence under *Schlup*, a Petitioner must present new evidence showing that "it is more likely than not that no reasonable juror would have convicted [the petitioner.]" *McQuiggin*, 569 U.S. at 399 (quoting *Schlup*, 513 U.S. at 327 (addressing actual innocence as an exception to procedural default)). Moreover, "[a]ctual innocence mean factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). Because actual innocence provides an exception to the statute of limitations rather than a basis for equitable tolling, a petitioner who can make a showing of actual innocence need not demonstrate reasonable diligence in bringing his claim, though a court may consider the timing of the claim in determining the credibility of the evidence of actual innocence. *Id.* at 399–400.

In response to the Court's order to show cause, Petitioner does not contest the Court's determinations regarding the running of the period of limitation or the Court's conclusions regarding equitable tolling. Instead, Petitioner argues that he is actually innocent.

Petitioner's argument regarding his innocence is convoluted. As noted above, Petitioner does not deny that he is guilty of the crime of second-degree child abuse as it is described in the information—he caused harm to the child by failing to promptly call 911. To build a claim of actual innocence in light of that admission is a daunting task.

Petitioner attempts to do so by ignoring the charge on which he was convicted under the child abuse statute, Mich. Comp. Laws § 750.136b, and focusing instead on a Michigan Supreme Court decision that interpreted a predecessor child cruelty statute. In *People v. Mankel*, 129 N.W.2d 894, 896 (Mich. 1964), the court considered the following statutory language: "Any parent . . . under whose protection any child may be, who . . . unlawfully punishes or wilfully, unlawfully or negligently deprives of necessary food, clothing, or shelter, . . . a child under 16 years of age . . . shall, upon conviction, be deemed guilty of a felony." *Mankel*, 129 N.W.2d at 896 (quoting now repealed version of Mich. Comp. Laws § 750.136). The court concluded that "shelter" did not include "medical attention" such that Mankel's failure to provide or procure medical attention when the victim was mortally wounded would not violate of the statute. *Id*. Petitioner then argues that Dr. Simms' report—if he could obtain it—would show that his failure was really in the nature of medical neglect such that, like Mankel, Petitioner was not guilty of violating the statute.

Petitioner, however, was convicted of violating an entirely different statute. The current child abuse statute declares that a person is guilty of second-degree child abuse if "[t]he person's

11

omission[4] causes serious physical harm or serious mental harm to a child or if the person's reckless act causes serious physical harm or serious mental harm to a child." Mich. Comp. Laws § 750.136b(3). It is also a second-degree offense if the person knowingly or intentionally commits an act likely to cause serious physical or mental harm to a child. *Id*. A failure to seek medical treatment can be a reckless, or even an intentional act, likely to cause harm, and therefore violate the statute wholly apart from the "omission" clause. Moreover, Plaintiff completely ignores the reality that he faced a first-degree child abuse charge for the acts that inflicted the injuries for which he failed to timely seek treatment; injuries described by the medical professionals as purposeful, not accidental. In short, Petitioner has wholly failed to provide evidence of his actual innocence; therefore, he is not excused from the statute of limitations under 28 U.S.C. § 2244(d)(1).

The Court concludes that Petitioner has failed to show cause to excuse the tardy filing of his habeas petition. The petition is properly dismissed as untimely.

### III.   Certificate of appealability

The Court must also determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.*

---

[4] An "omission" by statutory definition is limited to a "willful failure to provide food, clothing, or shelter necessary for a child's welfare . . . ." Mich. Comp. Laws § 750.136b(1)(c). Petitioner's *Mankel* argument focuses on this section of the statute. *See, e.g.*, *People v. Bryant*, __ N.W.2d __, 2022 WL 2182036, at *2 (Mich. Ct. App., Jun. 16, 2022); *People v. Krukowski*, Nos. 334320, 337120, 2019 WL 3519251 (Mich. Ct. App. Aug. 1, 2019).

Petitioner's application is untimely and, thus, barred by the statute of limitations. Under *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), when a habeas petition is denied on procedural grounds, a certificate of appealability may issue only "when the prisoner shows, at least, [1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Both showings must be made to warrant the grant of a certificate. *Id*.

Reasonable jurists could not find it debatable whether Petitioner's application was timely. Therefore, a certificate of appealability will be denied. Nonetheless, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter an order and judgment consistent with this opinion.

Dated:   July 15, 2022                         /s/ Robert J. Jonker
                                               Robert J. Jonker
                                               Chief United States District Judge